### WERTS v. SPEARMAN.

1. An administrator, who was also a creditor, filed his bill for the sale of the lands of his intestate in aid of assets. A son of deceased, a defendant to the action, by his answer claimed the land under an unrecorded deed from his father. *Held*, that plaintiff might, at the trial, attack this deed for fraud, although no charges of fraud were preferred in the bill.

2. A conveyance in consideration of a pre-existing debt, the vendor retaining possession, and such possession not satisfactorily explained, is fraudulent as to creditors.

3. But there being no actual fraud in the case, the vendee was permitted to establish the indebtedness of the intestate, the consideration in part

of the conveyance; and also to receive from the proceeds of the sale of such land the value of other property, which was also a part of the consideration, said property having been sold by intestate and applied to his debts.

4. Findings of fact by the Circuit judge approved.

5. Where charges of actual fraud are made against a defendant in a civil action, resting in great part upon circumstances, the defendant may introduce testimony as to his general character.

Before KERSHAW, J., Newberry, July, 1883.

The case is fully stated in the Circuit decree, which was as follows :

This case was commenced under the old system of pleadings, by a bill in equity, by the plaintiff as administrator of the estate of Graves Spearman, deceased, alleging, among other things, the insufficiency of personal assets to pay the debts of the deceased; that he himself held a note against his intestate under seal, which he set forth as an exhibit to the bill, upon which a considerable sum remained due, and that there were other debts; and there was a necessity for the sale of the real estate of the intestate to pay debts; that G. W. L. Spearman was in possession of a tract of land described in the bill, whereof the said intestate was owner at the time of his death; and that he had also possessed himself of personal property of the deceased. The bill prayed that the said G. W. L. Spearman be required to account for the personal property, and that the land be sold and the proceeds applied, so far as needed, to the payment of the debts of deceased. Graves Spearman was the father of G. W. L. Spearman, of Nancy Werts, wife of Jonathan Werts, and of the plaintiff, and the grandfather of the defendants.

No defence was made to the bill, except by G. W. L. Spearman, who answered, denying the possession of the personal property, except a few articles of little value, and admitted that he was in possession of the land, but denied that it was the land of the intestate at his death, but that it was the absolute property of him, the said G. W. L. Spearman. He also admits that the estate of the said intestate was insufficient to pay the debts of his estate.

The cause came to trial at November term, 1879, upon the law side of the Court of Common Pleas upon an issue submitted to a jury. There was no written statement of the issue, but his honor, the presiding judge, directed the jury that their verdict should be "either for the defendant, G. W. L. Spearman," or "that Graves Spearman died seized and possessed of the land, and that it is subject to the payment of the debts and distribution among the heirs at law of Graves Spearman." There was much testimony heard at the trial before the jury, and their verdict was "that Graves Spearman died seized and possessed of the 423 acres of land, and that it was liable for his debts, and to distribution among his heirs at law."

A motion for a new trial was thereupon made for the defendant, G. W. L. Spearman, and refused, and an order was signed by the presiding judge, reciting and confirming the verdict, directing that it be referred to the master to take the accounts of the administrator, and to determine and report upon all the issues of law and fact herein undisposed of, and calling in the creditors of Graves Spearman to establish their demands, and enjoining suits against the administrator in the meantime. This order was made at chambers. An appeal was thereupon taken by the defendant, G. W. L. Spearman, to the Supreme Court, upon various grounds. The case was returned to this court for a hearing on the merits, it being considered that the hearing upon which the said order was made could not be had at chambers. 16 *S. C.*, 618.

At the present hearing, much additional testimony was introduced, and the whole case was ably and fully argued by learned counsel on either side. Numerous questions, both of law and fact, were discussed, but only such will be stated here as I consider necessary to sustain this conclusion. On the 10th day of April, 1866, the deceased, Graves Spearman, conveyed, by deed duly executed and delivered to G. W. L. Spearman, the tract of land described in the complaint, the consideration recited being $4,230. This land constituted all of the real estate of Graves Spearman, except twenty-five acres, whereon he resided. He was largely indebted at that time to the plaintiff, on the note set up in the bill, and to others. On the same day, G. W. L. Spear-

man conveyed, by his deed duly executed and delivered to Graves Spearman, 279 acres of land, the consideration recited being $3,060. It is not denied that the latter conveyance was the consideration in part of the former. These 279 acres of land were made up of two parcels. The first, 212 acres, was conveyed by Graves Spearman to G. W. L. Spearman 28th December, 1859, when Graves was a man of large means and owing few debts, and they of small amount. Of this land, G. W. L. Spearman had been in possession from the date of the conveyance of the same to him. In a list of advancements made by Graves Spearman to G. W. L. Spearman, the value of this land is put down at $2,968. The list bears date December 20, 1849, and embraces a number of negroes given off by Graves Spearman to his children, G. W. L. Spearman, N. C. Werts, and Drucilla Werts. After giving off these slaves, he had upwards of forty remaining, worth at that time, at the value stated in the list of advancements, an average of between $900 and $1,000 each. Some of the witnesses said they were worth that. The advancement list was in the writing of Graves Spearman, and in a book kept by him. G. W. L. Spearman says he bought this land from his father. The deed conveying the same to him recited the consideration to be $2,968. This deed had but one witness; still, if it was made for a valuable consideration, it would be a good conveyance in equity, or if even for a good consideration. *Story Eq. Jur.*, §§ 166, 165 ; 1 *Foubl. Eq.*, ch. 1, § 7, *notes.*

This tract (279 acres) of land was subsequently conveyed by Graves Spearman to one Travis Hill, in settlement of a debt which he owed him, amounting to much more than the consideration named in the deed of G. W. L. Spearman conveying the same to him, and more than the consideration named in the deed for the tract of land (423 acres) conveyed by Graves to G. W. L. Spearman.

The other tract of land which, with the 212 acres, composed the tract of 279 acres, was derived by G. W. L. Spearman from one T. J. Taylor by purchase in 1858 (November 1st) for $1,000, the deed conveying 113 40-100 acres. At the time of this purchase there was a mortgage upon this land, held by one Adams (as I understood at the hearing), which, to the extent of $500,

was paid by Graves Spearman. In the list of advancements put down to G. W. L. Spearman, he is charged with the payment to B. Adams of $500. I assume that to be the same sum paid by Graves on the Taylor land. If so, as he entered it among the advancements, he intended it as a gift to G. W. L. Spearman, and being in circumstances at that time to make a valid gift, it must be so considered. The portion of the Taylor land so conveyed, with the 212 acres, was sixty-seven acres, making up the 279 acres conveyed by G. W. L. to Graves Spearman as part of the consideration of the deed for the 423-acre tract. To this extent, therefore, there was a valuable consideration passed from G. W. L. to Graves Spearman for the land in question.

G. W. L. Spearman sold the remainder of the Taylor land to Gen. A. C. Garlington, and lent the proceeds, $900, to Graves Spearman, taking his note for it. This, he testifies, constituted the remainder of the consideration for the land; that he gave up the note to his father when the papers were executed between them. There was in evidence a deed from Graves to G. W. L. Spearman and G. H. Werts, dated January 12, 1867, conveying to them twenty-five acres of land (the homestead) and personal property, valued at $132. The consideration of this deed was nominally $2,000. George H. Werts testified that Graves Spearman owed him $1,000; that Graves proposed to him and G. W. L. Spearman to convey to them his home place and his household and kitchen furniture in payment of their notes; that they finally agreed to take it, and credit their respective notes with the amount of $1,000 each. They then united in executing a lease to the home place to Graves for his life-time, at an annual rent of *one dollar*, which lease was produced and put in evidence.

G. W. L. Spearman testified that he worked with his father from 1846 to Christmas, 1866, and attended to his business, for which he claimed a sum over $3,800. It was claimed that after deducting the value of the 212 acre tract of land conveyed to him by his father, for the consideration expressed in the deed ($2,968), his father still owed him over $800, and that he held his father's note for that amount. He testified that he paid for the 423 acres of land by his deed for the 279 acres, and by his note against his father for $815, and immediately thereafter mentions his father's

indebtedness to him for services. From this it may be assumed that he meant that the note for $815, given in part payment for the land conveyed to him (423 acres), was given in settlement between him and his father for the difference between the value of the 212 acres and his services. This is not consistent with the fact that in the account for advancements kept by his father in 1859, he is charged with the value of the land, $2,968, and with the further fact that he is charged in the same account with $500 paid to Adams. I regret to say that there are other inconsistencies.

G. W. L. Spearman, in his testimony at the hearing before me, said: "Father owed me $900. I offered this money to Taylor on the land, and he would not have it, and I let father have it and he gave me his note for it. * * * The day father conveyed the twenty-five acres of land, the $956.30 note was given up to father. I have not seen it since, except that I saw it when looking over the papers after his death. * * * The $900 I let father have I got from Gen. Garlington. * * * The $900 was paid to Travis Hill on father's note, and father gave me his note. The debt to Travis Hill was compromised by land."

It will be noticed that he says he got the money from Garlington. Garlington's deed was dated February, 1867. He says, further, that his father gave him a note for it, and that he gave up the note the day his father conveyed to him the twenty-five acres. The deed bore date in January, 1867, while Geo. H. Werts testified that the arrangement for that purchase was completed in the latter part of February or the first of March, and the credits were dated back to the date of the deed. By that time the sale had been made to Garlington, and G. W. L. Spearman might have had his father's note for the money received by him from Garlington and lent to his father. There is no testimony to the contrary concerning this alleged loan, and Spearman mentions circumstances in connection with the subject which seem to make it probable that the transaction did take place, and which might have been disproved if not true. I think the evidence warrants the conclusion that G. W. L. Spearman did hold the note of Graves at that time to the amount stated by him, and that the

same was given up in payment for the twenty-five acres, the home place.

I conclude also that at the time of the conveyance of the 423 acres, G. W. L. Spearman held a note against his father, amounting at that time, with interest, to eleven hundred and seventy dollars ($1,170), which was given up as part of the consideration for that land. I deduce this from the same testimony of G. W. L. Spearman, that he had such a note, uncontradicted by any other witness. He is corroborated also by the statement of Geo. H. Werts, who says that G. W. L. Spearman claimed in the presence of Graves at one time that the latter owed him a thousand dollars before the land was sold to Garlington, and therefore not referring to the note given for that money. True, he says this was in October, 1866, but he may have been mistaken in the time, as he gave no reason for remembering the date.

In April, 1866, Graves Spearman resided at the home place, and continued to reside there until the time of his death, in April, 1867. There was some cleared land upon the 423 acre tract, but no buildings at the time of the transfer. About Christmas, 1866, G. W. L. Spearman went into possession of the land conveyed to him, except fifty acres of it, which remained in the possession of Graves, under a lease from G. W. L. Spearman to him, bearing date April 18, 1866, at an annual rent of one dollar. G. W. L. Spearman improved the land, erected buildings, and cleared fifteen or twenty acres of it, and has continued in the use and possession of it to the present time. The values set upon the lands conveyed by Graves to G. W. L. Spearman, and by the latter to the former, in the deeds respectively, do not appear to have been over or under stated. One witness estimated the land conveyed by the latter to be worth as much as the other.

The declarations of Graves Spearman, made both before and after the transactions, were admitted by the presiding judge at the first trial. As they are in evidence, I shall not exclude them. They are sufficient to cast suspicion upon the transaction, but not conclusive of fraud on the part of G. W. L. Spearman. The statement of the witnesses in regard thereto are not always consistent with other facts. Their evidence in other points is contradicted by G. W. L. Spearman, and they are all interested in

the case, with one exception, and his statement is not conclusive. G. W. L. Spearman proved a most excellent character by a number of witnesses, some of them known to me as of the highest character and intelligence.    There was objection made to the introduction of this testimony, and an exception taken when it was admitted.    The testimony was admitted upon the principle announced in *Dawkins* v. *Gault*, 5 *Rich.*, 153, that "where an actual fraud is charged, perpetrated with a fraudulent intent, and the proof of the charge consists of circumstances, then good character, as in a case of crime, might be resorted to as a circumstance to prove innocence."    The question here, in so far as it involves a charge of actual fraud upon the part of G. W. L. Spearman, appeared to me to be of that character, and for that reason, and upon that point only, the evidence was admitted and considered. There are cases elsewhere to the contrary, but I consider the rule as reasonable, and resting upon authority which I am bound to respect.    Numerous objections to testimony were made by defendants' attorney, but as they were put in writing and were not discussed at the trial, they will not be further noticed here.

One circumstance upon which great stress was laid, as tending to fix actual fraud upon G. W. L. Spearman, was the mutilation of a book of Graves Spearman by the former, in which certain accounts were kept.    It was supposed that it was done to suppress evidence.    I am satisfied that the account given by G. W. L. Spearman of that transaction was correct.    By comparison, I am satisfied that the leaves cut out by him are the same produced by him at the hearing, and which he had put together as a blank book for his own use, and contained no entries of Graves Spearman.    The other leaves cut or torn from the book I have no doubt were used, as G. W. L. Spearman testified, for writing paper during the war, when that article was obtained with great difficulty.

There are two leading questions of law to be disposed of:

First. It is insisted that the plaintiff had no right to bring an action to avoid his intestate's deed, and many authorities were cited to support the proposition.    The ground taken was that a grantor cannot avoid his own deed, and as an administrator succeeds to the intestate's title, he cannot aver against the deed of his intestate. This proposition of law is eminently sound, but in this

case the plaintiff was not only an administrator of the grantor, but also a creditor, and sued in both capacities. He had a right to come into equity, because he had no remedy at law, since he could not sue himself. Any other creditor but himself would have been compelled to exhaust his legal remedy before coming into this court, but he having no such remedy, had a right to come into this Court directly. A very late case having been decided upon this precise point, and in a case parallel to this, precludes the necessity of any discussion here. In *Winsmith* v. *Winsmith* (15 *S. C.*, 611), an action was brought by an administratrix to sell land in aid of assets, and creditors were called in. *Held:* "That the administratrix, being herself a creditor, could, as creditor, object to the validity of a voluntary bond and mortgage given by her intestate when presented for proof." I conclude, therefore, that plaintiff had the right to contest the deed of Graves Spearman. The action was such as an administrator could rightfully maintain, being an ordinary bill to sell lands in aid of personal assets, and for an account of personal property in possession of a distributee and heir. The defendant at the trial set up the deed, and the plaintiff undertook to show that it was void as against creditors. Under the authorities cited I think he could do this.

The next question is, Was the deed of Graves Spearman to G. W. L. Spearman, conveying 423 acres of land on the 10th April, 1866, void as against creditors ? I conclude that it was. It was made at a time when the grantor was in embarrassed circumstances, resulting in the insolvency of his estate. It was made, in part, in consideration of a pre-existing debt due by the grantor to the grantee. The grantor remained in possession of a portion of the land under a lease made for a nominal consideration. The deed of conveyance was not placed upon record. The grantor conveyed away all of his property, mostly to his children, even his homestead and household furniture, retaining possession under a lease for a merely nominal consideration, none of these conveyances being recorded. As I understand the law in South Carolina to be, a conveyance of land made under such circumstances cannot stand as against the claims of existing credi-

tors, and being void as to one class, is void also as to all other creditors.

The cases upon this subject have been so often and so fully discussed here and elsewhere, that I do not purpose to do more than refer to the authorities. The English and American cases are collated and discussed by Ch. Kent (2 *Com.*, 515, *et seq.*) with the ability for which that great jurist was so highly distinguished, and also in the American edition of *Smith's Leading Cases* (vol. 1, p. 1), under *Frazier's Case.* The notes of the editors state the law in this state succinctly and correctly.

[Here the judge cited and quoted largely from *Smith* v. *Henry*, 1 *Hill*, 16 ; *Maples* v. *Maples*, *Rice Ch.*, 310 ; *Anderson* v. *Fuller*, *McMull. Eq.*, 27.]

From these authorities, it is properly said that in South Carolina the rule is established "that where a pre-existing debt is the consideration of a conveyance, or a part of the consideration, retention of possession and use, without a new agreement to that effect, on adequate consideration, is a fraud in law." 1 *Sm. Lead. Cas.*, 63. The cases establishing this doctrine were subscribed to by all the judges of the Court of Errors who heard the case of *Cox* v. *McBee*, 1 *Speer*, 204. "If there be a new contract of hiring on sufficient consideration, it will rebut the presumption of fraud; * * * but retention of possession after an absolute sale *for a price paid* is not conclusively fraudulent, but only *prima facie* evidence of fraud, and capable of explanation." *Sm. Lead. Cas.*, *supra*, and cases therein cited. No case since *Anderson* v. *Fuller* has changed the rule as applicable to cases where an antecedent debt constituted part of the consideration. This case falls distinctly within the inhibition of the rule as stated, and the other circumstances attending the transaction materially strengthen the legal presumption that the conveyance in question was fraudulent, and consequently void as against creditors.

Having reached this conclusion, the question arises, Is G. W. L. Spearman to be allowed the value of the actual considerations paid by him? As I have not found actual fraud against him, and as the land transferred to Graves was applied to the satisfaction of a debt due by him for more than double the value of the

land, I think, upon the principles adopted in *Anderson* v. *Fuller*, that G. W. L. Spearman should be repaid the value of that land. He will be allowed nothing for his improvements, but will not be made to account for rents, or use and occupation. As to the note of Graves cancelled in the trade for that land, it will be re-instated as a debt against the estate of Graves Spearman, according to the character of the note, to the amount of eleven hundred and seventy dollars ($1,170), but without interest. This amount is the difference between the values of the two tracts of land exchanged between Graves and G. W. L. Spearman, and must have been the amount due on the note at that time. A reference will be necessary to determine whether it was a sealed note or otherwise.

The question regarding the personal property having been withdrawn from my consideration by consent of counsel, this decree may here be closed.

It is ordered and decreed, that it be referred to the master to take testimony and report whether the note of Graves Spearman, which constituted part of the consideration for the conveyance of the 423-acre tract of land to G. W. L. Spearman, was a sealed note or otherwise, and that the same be established as a debt against the estate of Graves Spearman to the amount of eleven hundred and seventy dollars ($1,170), according to the class of claims to which it shall be determined to belong; that the tract of land described in the complaint, containing four hundred and twenty-three acres, as set out in the deed from Graves Spearman to G. W. L. Spearman, dated April 10, 1866, be sold by the master, as of the estate of Graves Spearman, on the first Monday in November next, or some other convenient sales-day thereafter, to the highest bidder for cash; that he pay from the proceeds of sale, first, the costs of these proceedings and the costs of sale; next, that he pay to G. W. L. Spearman the sum of three thousand and sixty dollars, being the value of the land transferred by him to Graves Spearman in exchange for the aforesaid tract of 423 acres; next, that he pay the debts established, or that may be established, in this cause against the estate of Graves Spearman, according to their legal rights and priorities; and, lastly, should anything remain, that he pay the same to the

heirs at law of Graves Spearman, according to their several rights and interests therein.

The plaintiff, G. H. Werts, and the creditors of the said Graves Spearman, appealed from this decree on the following grounds:

. I. Because his honor erred in not finding that the evidence established a clear case of actual fraud on creditors in the deed from Graves Spearman to G. W. L. Spearman for the 423 acres of land, and that it was so intended both by the alienor and alienee.

II. Because his honor erred in allowing G. W. L. Spearman, out of the proceeds of the sale ordered in the decree, the sum of $3,060, being the consideration expressed in the deed for the 279 acres from him to Graves Spearman, at all, and much more so in giving him a preference over creditors whose claims have been established in this case.

III. Because his honor erred in directing that the note alleged to have been cancelled in the transaction be reinstated as a debt against the estate of Graves Spearman.

IV. Because the verdict of the jury was fully sustained by the evidence and by the opinion of the judge who heard the case when it was tried before the jury.

V. Because his honor erred in allowing evidence to be introduced to prove the general character of defendant.

VI. Because his honor erred in finding as a fact that G. W. L. Spearman did not mutilate the book in which Graves Spearman kept an account of his transactions and particulars with his children, when it was proved by four reliable witnesses, two of whom are in no way interested in this case, that they saw him do it.

VII. Because his honor erred in finding as a fact that the deed for the 423 acres from Graves Spearman to G. W. L. Spearman was duly executed and delivered.

VIII. Because his honor erred in finding as a fact that it is not denied that the conveyance of the 279 acres was the consideration in part of the 423 acres, when the contrary is true.

· IX. Because his honor erred in holding that the $500 paid by G. Spearman for G. W. L. Spearman to Adams on his mort-

gage on the Taylor tract was a gift, simply because it was found entered at the bottom of a list of property given by G. Spearman to G. W. L. Spearman, when he found that the land $2,968, which was also entered at bottom of said list, was not a gift but a purchase.

X. Because his honor erred in finding as a fact that G. W. L. Spearman sold the remainder of the Taylor land to A. C. Garlington, and loaned the proceeds ($900) to G. Spearman, which constituted the remainder of the consideration for the land, when the evidence shows that this could not have been so, for Garlington only gave $596.25 for said land, and paid for it and took a deed near a year after the alleged transfer of the 423 acres to G. W. L. Spearman.

XI. Because his honor erred in disbelieving the six witnesses sworn on the part of the plaintiff, when they testify to what they actually saw and heard, and when there was no attempt to impeach their character for truthfulness, and when they were sustained by papers produced and the circumstances developed in the case.

XII. Because his honor erred in finding that G. W. L. Spearman had another note besides the $956.30 note, and that he is uncontradicted in this by any other witness, when the declarations of himself and G. Spearman, proved by some four witnesses, show that the said G. Spearman only owed him about $1,000 on settlement.

XIII. Because his honor erred in not charging G. W. L. Spearman with rents on the 423 acres of land in controversy.

The defendant, G. W. L. Spearman, appealed on the following grounds :

I. Because his honor, the presiding judge, erred in not finding as a matter of fact that the said G. W. L. Spearman purchased the tract of 423 acres, here in dispute, from his father, Graves Spearman, for a valuable and sufficient consideration.

II. Because his honor, the presiding judge, erred in not finding as a matter of fact that the said G. W. L. Spearman purchased the said tract of land in good faith, without knowledge of any intention on the part of the said Graves Spearman to de-

fraud, hinder, or delay his creditors, and without reason to suspect any such intention.

III. Because his honor erred in not finding as matter of fact that the said G. W. L. Spearman let the fifty acres of land to Graves Spearman, after the acquisition of the 423 acres, as a mere gratuity, and that its reservation for the use of Graves Spearman was not any part of the consideration of the transfer of the 423 acres from Graves to G. W. L. Spearman.

IV. Because his honor erred in not excluding all declarations of Graves Spearman made after the execution of his deed to G. W. L. Spearman as incompetent to impeach or explain that deed.

V. Because his honor erred in not finding as a conclusion of law, that the said G. W. L. Spearman, by such said purchase and the conveyance of the said land herein, acquired a valid and sufficient title to the said land, and that the said land is not liable to the claim of creditors of the said Graves Spearman.

VI. Because his honor erred in not dismissing the bill, and requiring the plaintiff to pay the costs of the action.

VII. Because his honor erred in not dismissing the bill, inasmuch as it alleged that Graves Spearman died seized and possessed of the 423 acres of land, whereas it was established beyond dispute that he, in 1866, conveyed the same to the defendant, G. W. L. Spearman, who was in possession at the death of Graves Spearman.

VIII. Because his honor erred in not dismissing the bill, inasmuch as it does not allege any conveyance which it claims ought to be set aside, nor embrace any charge of fraud against creditors or others, which ought or could operate as a reason for setting aside the conveyance attempted on the trial to be set aside, and which his honor by his decree undertakes to set aside.

Others, defendants, appealed upon substantially the same grounds as the creditors.

*Messrs. L. J. Jones* and *Geo. S. Mower,* for plaintiff and creditors.

*Messrs. Y. J. Pope* and *Suber & Caldwell,* contra.

March 9, 1885. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. Graves Spearman, late of
Newberry County, died in 1869 intestate. George H. Werts
(respondent), a son-in-law of the deceased, administered on the
estate, and in February, 1870, he instituted the proceeding below,
in which he alleged that he was a creditor of the estate; that
the personal property in his hands as administrator was insuffi-
cient to pay the debts; that the defendant, G. W. L. Spearman,
a son of the deceased, was in possession of a portion of the per-
sonalty, and that the deceased died seized and possessed of a cer-
tain tract of land of 423 acres, more or less, and prayed an
accounting from G. W. L. Spearman as to the personalty alleged
to be in his hands, and the sale of the aforesaid land in aid of
the personalty, and that creditors be called in. No defence was
interposed by any of the parties except G. W. L. Spearman, who
answered, denying his accountability for any personal property,
and also asserting title in himself of the tract of land in ques-
tion.

The case came to trial at the November term of Common
Pleas for Newberry County in 1879, when an issue as to the title
to the land was submitted to a jury. The plaintiff introduced a
deed to Graves Spearman, the intestate, from the then Commis-
sioner in Equity for said county, dated in 1828. He also proved
that the estate was indebted to him in a large amount by seal
note, dated March 22, 1863. The defendant relied upon an un-
recorded deed from Graves Spearman to himself, dated April 10,
1866, the consideration being $4,230, which, according to the
evidence, was paid by the said G. W. L. Spearman to Graves in
the conveyance by the former to the latter of a certain other
tract of land containing 279 acres, valued at $3,060, the balance
being paid by a note held by G. W. L. Spearman on his father,
which was delivered up and cancelled. The 279-acre tract it
appeared was made up out of a tract of land of 212 acres pre-
viously obtained by G. W. L. Spearman from his father and a
portion of a tract which he, G. W. L., had bought from one
Taylor.

There was some evidence that the 212-acre tract had been given
to the said G. W. L. by his father as an advancement several

years back.    It further appeared that the said G. W. L. occupied
the land, but did not live upon it; that he cultivated it some-
times with his own hands and sometimes with his father's and his
own together.    It was further in evidence that some days after
the purchase, _i. e._, April 18, 1866, he had leased fifty acres of
the land to his father for life at a consideration of one dollar per
annum, with the privilege of getting all necessary timber, fuel,
&c., from any of his lands.    At the time the 212-acre tract was
transferred by Graves to his son, he, Graves, was a man of con-
siderable estate.    At the time of the last transaction, however,
in 1866, he was much embarrassed, and it was admitted that at
his death his personal assets were insufficient to pay his debts.
It further appeared that Graves in his life-time, after he had ob-
tained the 279-acre tract from his son in the transfer of the
lands mentioned, had conveyed said tract to one Francis Hill in
settlement of a large debt, amounting to much more than the
consideration mentioned in the deed conveying said land to him.

The jury found that Graves Spearman died seized and pos-
sessed of the 423-acre tract, and that it was liable for his debts
and distribution among his heirs at law.    A motion was then
made for a new trial on the minutes of the judge, which, after
argument, was refused, and upon appeal taken to this court the
case was remanded to the Circuit Court for a new trial.    16
_S. C._, 618.    The cause came on again for a second trial before
his honor, Judge Kershaw, at the July term of the court, 1883.
Upon this trial the testimony offered at the former trial was heard
by consent, including certain declarations of Graves Spearman,
made both before and after the land transaction above, with other
and additional evidence.

The two leading questions of law discussed and decided in the
decree of his honor, Judge Kershaw, are: First. Whether the
plaintiff, being administrator of the intestate, could contest the
intestate's deed of the 423 acres to the defendant.    Second.
Whether said deed was void as to creditors.    As to the first ques-
tion his honor ruled that the plaintiff being a creditor as well as
administrator, and having no remedy at law, could maintain the ac-
tion, contesting said deed, citing _Winsmith_ v. _Winsmith_, 15 _S. C._,
611.    As to the second, finding as matter of fact that the deed

from the father to the son was executed when the father was in embarrassed circumstances, resulting in the insolvency of the estate; that it was made in part in consideration of a pre-existing debt; that the grantor remained in possession of a portion of the land under a lease for a nominal consideration; that the deed was never recorded; and that the grantor remained in possession of all his property conveyed to his other children under leases from them—he adjudged the said deed to be void as against creditors, but without "actual fraud" in G. W. L.; and inasmuch as the land transferred by G. W. L. to his father was applied by the father to the satisfaction of a large debt due by him to Hill, he further adjudged and decreed that the said G. W. L. should be refunded the value of said land, without improvements, and not to account for rents and profits; and also that the said G. W. L. should be allowed to set up against the estate the note which he had delivered up in the land trade according to its rank, and to the amount of $1,170. And he ordered the land to be sold, the proceeds after the payment of the costs to be applied, first, to the payment to G. W. L. Spearman of the sum of $3,060, the value of the land transferred by him to his father in exchange for the 423-acre tract; next, to the payment of the debts established, or that may be established, against the estate according to their legal rank; and, lastly, should anything remain, to be paid to the heirs at law, according to their rights.

The appeal of the defendant does not question the ruling of the Circuit judge as to the right of the plaintiff to contest the deed of his intestate as a general proposition. That question, therefore, is not before us. The eighth exception, however, denies his right to do so in this action, as the bill was not framed for that purpose, there being no charge of fraud therein nor any demand that said deed should be vacated and set aside. Should the bill have been dismissed on this ground, is the question raised in this exception. In *Lowry* v. *Pinson* (2 *Bail.*, 324) the plaintiff was allowed without question to attack and defeat for fraud the deed of defendant interposed at the trial, and yet there was no allegation of fraud in the declaration nor claim that defendant's deed should be declared void. The action was the ordinary action for trespass to try titles, the plaintiff claiming as

purchaser at sheriff's sale, and the defendant under a prior deed from the judgment debtor. So, too, in *Thomas & Ashby* v. *Jeter & Abney*, 1 *Hill Ch.*, 380; *Smith* v. *Culbertson*, 9 *Rich.*, 106, and in many other cases.

In fact, the practice in the law courts of contesting deeds in this way for fraud is of old standing, and has been frequently pursued in the past. The action below, it is true, was not in form an action to try titles, yet it assumed that form at the trial, by the defendant asserting title in himself to the land in dispute. The plaintiff, as administrator and creditor, claimed that it was necessary to sell the real estate of his intestate in aid of the personalty to pay debts, and he alleged that the intestate died seized and possessed of the land in question. The defendant appeared and claimed the land himself, by virtue of a deed from the deceased, thus raising the question of title, and therefore putting the validity of his deed in issue himself. Under these circumstances, and by analogy to the cases above referred to, ought not the plaintiff to have been allowed to assail the deed at the trial, when for the first time it had perhaps been presented or known to exist; especially in a case like this, where the plaintiff, because of the fact that he was the administrator of his deceased debtor, had no means of reducing his debt to judgment, and of exhausting the estate by execution and return of *nulla bona?* Unless this could be done, in cases like the present, then the principle that there can be no legal right without a remedy to enforce it should be exploded.

Besides, in *Ragsdale* v. *Holmes* (1 *S. C.*, 96) it was held that creditors of an estate could seek the application of the assets to their claims, by means of a creditors' bill, before reducing them to judgment and without exhausting their legal remedies. That necessity, it was said in that case, existed *inter vivos*, "for the reason that the estate of the living debtor does not become assets for the payment of debts until the exhaustion of the legal remedies is complete, whereas the estate of a deceased debtor, or so much thereof as may be required for the payment of his debts, becomes assets from his decease."

The next question involves the correctness of the Circuit decree as to the validity of defendant's deed. The Circuit judge,

though finding no "actual fraud" in the defendant, yet declared this deed void for legal fraud under the cases of *Smith* v. *Henry,* 1 *Hill,* 16, and *Maples* v. *Maples, Rice Ch.,* 310, and the other cases referred to in the decree, on the ground that where property is transferred by a debtor to his creditors in payment of a pre-existing debt, either in whole or in part, the debtor still retaining possession, the transaction is *per se* fraudulent. True, he says that the other circumstances attending the transaction strengthened the legal presumption, and upon these two principles he adjudged the deed fraudulent.

We think he gave rather too much weight to *Smith* v. *Henry,* especially in the light of subsequent cases, which, though not distinctly overruling that case, have modified and explained the principle, which seems to have been applied there by the authority of Chancellor Harper himself, who pronounced the opinion in *Smith* v. *Henry.* In *Jones & Briggs* v. *Blake and wife* (2 *Hill Ch.,* 636) it was held, Chancellor Harper delivering the opinion, that where the debtor retained possession by virtue of a contract of hiring, made after the sale and independent thereof, this relieved the transaction of the *per se* fraudulent feature, as laid down in *Smith* v. *Henry.* The same doctrine was held in *Pringle* v. *Rhame,* 10 *Rich.,* 75, which was also a case of hiring, and in the recent case of *Pregnall & Brother* v. *Miller & Kelly,* 21 *S. C.,* 385. Considering the principle upon which these two cases were based, this court held that it could not be confined in its application to a case of hiring alone, but that it extended to all cases where possession was retained, leaving such possession an open question in every case, with the burden, however, of explaining it satisfactorily upon the party attempting to sustain the deed, and in the absence of such satisfactory explanation, to have the effect as held in *Smith* v. *Henry.*

Now, in this case we have found no testimony explaining the possession retained here. The conveyance was made upon the consideration of a pre-existing debt, in part at least. The possession of a portion of the land was retained upon a nominal consideration, and this was to continue for the life of the grantor. With these facts unexplained, we think the decree of his honor may be sustained even in accordance with *Pringle* v. *Rhame* and

*Pregnall & Brother* v. *Miller & Kelly, supra.* The Circuit judge distinctly found no actual fraud on the part of G. W. L., and on that account he adjudged that the defendant should be refunded the value of the 279 acres transferred to his father in the exchange of lands, and also that he should be allowed to set up against the estate his note which was delivered up and cancelled in that trade also. *McMeekin* v. *Edmonds,* 1 *Hill Ch.,* 294, sustains this.

Under the rules which control this court as to the findings of fact in equity causes, we cannot interfere with such findings below, as we are unable to say that the manifest weight of the testimony is against these findings.

Lastly, the plaintiff excepted to the admission of testimony as to character of the defendant, G. W. L. No doubt, as a general rule in civil cases, such testimony is incompetent, but there are cases even on the civil side where such evidence has been received, under a principle which makes it competent in similar cases. Mr. Greenleaf, than whom there is no higher authority on evidence, says: "In civil cases, such evidence [speaking of general character] is not admitted, unless the nature of the action involves the general character of the party, or goes directly to affect it;" referring to several cases in the notes. *Green. Evid.,* § 54. And further, he said: "Generally in actions of tort, wherever the defendant is charged with fraud from mere circumstances, evidence of his general good character is admissible to repel it." And Judge O'Neall, in *Dawkins* v. *Gault* (5 *Rich.,* 153), though the case did not turn on it, recognizes this principle, and referring to Greenleaf, and also to *Smets* v. *Plunket* (1 *Strob.,* 372), said: "Where an actual fraud is charged, perpetrated with a fraudulent intent, and the proof of the charge consists of circumstances, then good character, as in a case of crime, might be resorted to." The Circuit judge says the "case below was of that character;" charges of actual fraud were made against the defendant, and in a great part resting on circumstances; "and upon that point only the evidence was admitted and considered." We do not think this was error.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.